**In re Carla Mae KALITA, f/k/a Carla Mae Wilson, Debtor.**

**Tammy K. VOGEL, a/k/a Tammy K. Sinkovic, Plaintiff,**

v.

**Carla Mae KALITA, f/k/a Carla Mae Wilson, Defendant.**

Bankruptcy No. 95–83316.
Adversary No. 95–8293.

United States Bankruptcy Court, W.D. Michigan.

Nov. 18, 1996.

Jack E. Boynton, Traverse City, MI, for Plaintiff.

Roy C. Hayes III, Charlevoix, MI, for Defendant.

## SUPPLEMENTAL OPINION REGARDING POSSIBLE APPLICABILITY OF COLLATERAL ESTOPPEL

JAMES D. GREGG, Bankruptcy Judge.

### I. ISSUES

Does a Michigan state court criminal conviction for felonious assault, based upon a *nolo contendere* plea, collaterally estop a defendant-debtor from litigating a nondischargeability action under section 523(a)(6) of the Bankruptcy Code? [1]

Does a Michigan state court civil judgment for assault and battery, based upon a "true default," i.e., there was no appearance and absolutely no participation in the state court action, collaterally estop a defendant-debtor from litigating a nondischargeability action under section 523(a)(6) of the Bankruptcy Code? [2]

### II. BACKGROUND

The relevant factual background and procedural history which give rise to this motion for summary judgment are essentially undisputed. On August 25, 1984, Tammy K. Vogel (a/k/a Tammy K. Sinkovic) ("Vogel") and Carla Mae Kalita (f/k/a Carla Mae Wilson) ("Kalita") were involved in an altercation in which Vogel was injured. This incident resulted in a criminal prosecution against Kalita. On June 28, 1985, Kalita was convicted of the crime of felonious assault. *See* Mich. Comp.Laws Ann. § 750.82. The 1985 Judgment of Sentence indicates that Kalita's conviction was based on a plea of "n.c." or "*nolo contendere.*" *See* Plaintiff's Brief, Exhibit B. In an affidavit attached to her Brief in Opposition to Plaintiff's Motion for Summary Judgment, Kalita stated the reason for her *nolo contendere* plea: "That on or about June 28, 1985 affiant pleaded no contest to the criminal charge of Felonious Assault, because she was told by her attorney she could not get a fair trial on account of small town politics in the town of Pinckney, Michigan." *See* Kalita's Affidavit, ¶ 14.

On May 13, 1985, Vogel filed a civil complaint against Kalita in the Michigan State Circuit Court for the County of Livingston. The complaint alleged that on or about August 25, 1984, "Defendant did assault and batter the Plaintiff with a knife," and, as a result, Vogel "sustained physical injuries, including, but not limited to, multiple lacerations and stab wounds to her abdomen, face, and upper extremities." Based on these allegations, Vogel claimed damages in excess of $10,000. A copy of the 1985 complaint was attached as Exhibit A to Plaintiff's Brief in Support of Motion for Summary Judgment ("Plaintiff's Brief").

Kalita was served with the civil complaint dated May 13, 1985, but failed to answer or appear. On November 25, 1985, a Default Judgment was entered in favor of Vogel and against Kalita in the amount of $25,000.00, plus taxable costs and interest. *See* Plaintiff's Brief, Exhibit D. In her Brief in Oppo-

---

1. The Bankruptcy Code, as amended, is set forth in 11 U.S.C. §§ 101–1330. Unless otherwise stated, all further statutory references are to title 11 of the United States Code.

2. Section 523(a)(6) of the Code provides in pertinent part, "A discharge under section 727 ... of this title does not discharge an individual debtor from any debt ... for willful and malicious injury by the debtor to another entity or to the property of another entity."

sition and the accompanying affidavit, Kalita attempted to explain the circumstances which led to the 1985 default judgment. Kalita claims that she "took no steps to defend Ms. Vogel's civil suit, because she had given the complaint to her attorney who told her he would take care of it." *See* Kalita's Affidavit, ¶ 16. Moreover, Kalita claims that she was incarcerated on the Felonious Assault charge when the November 25, 1985 default judgment was entered against her. *See* Kalita's Affidavit, ¶ 15.

Apparently, Vogel did not have much success in collecting the damages awarded against Kalita in the 1985 Judgment. Ten years later, Vogel filed another complaint in the Michigan Circuit Court for the County of Livingston to renew the 1985 Judgment. *See* Plaintiff's Brief, Exhibit E. The 1995 Complaint recited the basis for the original 1985 judgment for $25,000 and claimed additional interest in the amount of $44,554.89 based on a 12% interest rate compounded annually.

On May 26, 1995, the state circuit court entered another judgment against Kalita in the amount of $69,641.89, representing the original 1985 judgment plus accrued interest. *See* Plaintiff's Brief, Exhibit F. In her Brief in Support, Vogel alleges that the 1995 complaint was properly served on Kalita and that she failed to respond. Kalita does not dispute this contention.

On July 3, 1995, Kalita filed a Voluntary Petition under chapter 7 of the Bankruptcy Code. On August 21, 1995, Vogel filed an adversary proceeding in which she alleged that the debts arising from the civil judgments were based on Kalita's willful and malicious conduct. Vogel seeks a determination that the judgment debt is excepted from discharge under section 523(a)(6).

In her Motion for Summary Judgment and Brief in Support, Vogel argues that she is entitled to judgment as a matter of law on her nondischargeability action against Kalita.

Specifically, Vogel contends that Kalita's state court conviction for felonious assault and the subsequent civil judgments for assault and battery were based on Kalita's willful and malicious conduct. Therefore, Vogel asserts that Kalita is collaterally estopped from defending the facts in the current nondischargeability action.

In response, Kalita raises a factual issue by claiming that she was acting in self-defense at the time she stabbed and slashed Vogel with a "fishing fillet knife" during the 1984 altercation. *See* Kalita's Affidavit. Kalita argues that her criminal conviction was based on a plea of *nolo contendere* which is not entitled to preclusive effect in any subsequent civil actions. She also contends that both the 1985 civil judgment and the 1995 judgment were based on "true defaults" and that the issues were not actually litigated. Thus, Kalita concludes that the state court criminal and civil judgments do not collaterally estop her in this adversary proceeding.[3]

## III. DISCUSSION

This court has jurisdiction over the base bankruptcy case and this adversary proceeding. 28 U.S.C. § 1334; W.D.MICH.L.R. 57 (cases and proceedings referred to bankruptcy court). This adversary proceeding is a core proceeding. 28 U.S.C. § 157(b)(2)(*l*).

Rule 7056 of the Federal Rules of Bankruptcy Procedure incorporates by reference Rule 56 of the Federal Rules of Civil Procedure which provides in part:

> The judgment sought shall be rendered forthwith if the pleading, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

FED.R.CIV.P. 56(c). The party moving for summary judgment bears the initial responsi-

---

**3.** On September 27, 1996, this court rendered an extemporaneous oral bench decision. The parties' attorneys were advised that this supplemental opinion, which is entirely consistent with the oral opinion, would follow. The court utilized this procedure to hold the final pretrial conference and to schedule a prompt trial.

bility of informing the court of the basis of its motion and identifying those portions of the record which demonstrate the absence of a material issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the moving party has met its initial burden, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact on which the nonmoving party will bear the burden of proof at trial. FED. R.CIV.P. 56(e); *Celotex,* 477 U.S. at 322–24, 106 S.Ct. at 2552–53. If, after adequate discovery, the party bearing the burden of proof fails to make a showing sufficient to establish an essential element of his claim, summary judgment is appropriate. *Id.*

As the moving party, Vogel has met her initial burden of advising the court of the basis for her motion and identifying the relevant portions of the record which demonstrate an absence of material issues of fact. Vogel has provided the court with copies of the state court judgments and the related civil complaints. Kalita does not contest the authenticity or admissibility of any of the state court pleadings or documents submitted by Vogel. Instead, Kalita challenges the preclusive effect of the prior judgments on the instant proceeding. This is an issue of law which can, and should, be resolved through summary judgment.[4] Under these circumstances, Vogel bears the burden of establishing that the requirements of collateral estoppel have been met. *Spilman v. Harley,* 656 F.2d 224, 229 (6th Cir.1981).

### A. The Distinction Between Res Judicata and Collateral Estoppel

In her legal memorandum, Vogel addresses the "confusingly related and often carelessly mis-named doctrines of collateral estoppel, res judicata, issue preclusion and claim preclusion...." *See* Plaintiff's Brief, p. 3. While Vogel may be correct in describing the doctrines of *res judicata* and collateral estoppel as "confusingly related and often carelessly mis-named," they are not the same. The difference between *res judicata* ("claim preclusion") and collateral estoppel ("issue preclusion") has been explained as follows:

> The primary difference between *res judicata* and collateral estoppel, as developed in *Cromwell v. County of Sac,* [94 U.S. 351, 24 L.Ed. 195 (1877) ] is that *res judicata* bars a second action on the same claim or cause of action including all matters that were raised or could have been raised in the first action, while collateral estoppel precludes relitigation of only such issues as were actually raised, litigated and determined in the first action and the decision of which were necessary to the judgment rendered.

1B JAMES WM. MOORE, ET AL., MOORE'S FEDERAL PRACTICE ¶ 0.443[3] (2d ed. 1995).

 The distinction between *res judicata* and collateral estoppel has also been observed by the United States Supreme Court in the context of bankruptcy proceedings involving exceptions to discharge. In *Brown v. Felsen,* 442 U.S. 127, 138–39, 99 S.Ct. 2205, 2212–13, 60 L.Ed.2d 767 (1979), the Supreme Court held that the doctrine of *res judicata* does not apply in bankruptcy dischargeability proceedings. The *Brown* case involved a dispute between a creditor, a debtor and his guarantor. A state court action between the parties was resolved by stipulated judgment. Thereafter, the debtor filed for bankruptcy protection and the guarantor filed a nondischargeability action alleging that the debtor

---

4. Kalita also seems to suggest that there is a material issue of fact regarding whether her conduct during the 1984 altercation with Vogel was willful and malicious. Kalita's affidavit includes several allegations in which she attempts to demonstrate that she was acting in self-defense. Presumably, Vogel disputes this version of the incident. However, the court need not rule on this factual dispute for purposes of deciding the motion. Vogel's motion is predicated on the argument that Kalita is estopped from raising the factual issue of self-defense based on the prior state court judgments arising from the same incident. If Vogel's legal argument is correct, she is entitled to judgment as a matter of law. Conversely, if Kalita is not precluded from raising the issue of self-defense, then the parties will proceed to trial on the issue of whether or not the debt owed to Vogel is dischargeable.

had fraudulently induced him to guarantee the loan.[5] In response, the debtor argued that the prior state court proceeding did not result in a finding of fraud, and that the nondischargeability proceeding was barred by the doctrine of *res judicata* because it involved the same debt at issue in the state court action. The Supreme Court reversed the lower court rulings in favor of the debtor and held that the doctrine of *res judicata* did not bar the bankruptcy court from deciding the issue of whether the debt was dischargeable. *Brown v. Felsen*, 442 U.S. at 138–39, 99 S.Ct. at 2212–13. In a footnote to its opinion, the Supreme Court indicated that although the doctrine of *res judicata* did not apply, the doctrine of collateral estoppel may be applicable; but the Court expressly refrained from deciding the issue:

> This case concerns *res judicata* only, and not the narrower principle of collateral estoppel. Whereas *res judicata* forecloses all that which might have been litigated previously, collateral estoppel treats as final only those questions actually and necessarily decided in a prior suit.... If, in the course of adjudicating a state-law question, a state court should determine factual issues using standards identical to those of § 17, then collateral estoppel, in the absence of countervailing statutory policy would bar relitigation of those issues in the bankruptcy court. Because respondent does not contend that the state litigation actually and necessarily decided either fraud or any other question against petitioner, we need not and therefore do not decide whether a bankruptcy court adjudicating a § 17 question should give collateral-estoppel effect to a prior state judgment.

*Brown v. Felsen*, 442 U.S. at 139, n. 10, 99 S.Ct. at 2213, n. 10 (citations omitted). In a footnote to a subsequent opinion, the Supreme Court answered this question—the doctrine of collateral estoppel may apply in bankruptcy proceedings involving exceptions to discharge. *See Grogan v. Garner*, 498 U.S. 279, 284, n. 11, 111 S.Ct. 654, 658, n. 11, 112 L.Ed.2d 755 (1991) (principally holding that the preponderance of evidence standard applies in nondischargeability actions).

■ The doctrine of *res judicata* does not bar Vogel from filing an adversary proceeding against Kalita alleging that the judgment debt should be excepted from discharge. *See supra, Brown v. Felsen.* Nor does *res judicata* prohibit Kalita from defending against the nondischargeability action. *Id.* This court must make its own determination as to whether or not the debt owed by Kalita to Vogel should be excepted from the discharge in bankruptcy. However, a determination of the ultimate legal issue may be governed by any factual issues that were actually and necessarily decided in the prior state court actions. *See Grogan v. Garner*, 498 U.S. 279, 284, n. 11, 111 S.Ct. 654, 658, n. 11, 112 L.Ed.2d 755 (1991). In sum, the issue before this court is not one of *res judicata,* but rather, a question of collateral estoppel. Is this court bound by the prior state court rulings in accordance with the principles of full faith and credit?

### B. *General Principles of Full Faith and Credit*

Article IV, section 1 of the United States Constitution requires that "full faith and credit" be given by each state to the acts, records, and judicial proceedings of every other state. U.S. CONST., art. IV, § 1. The Constitution further authorizes Congress to enact laws that prescribe the manner in which such acts, records and proceedings are proved and the effect thereof. *Id.* Congress has exercised its authority through the enactment of section 1738 of the Judicial Code which provides in part that: "judicial pro-

---

**5.** The Brown case involved the exceptions to discharge for debts false pretenses or fraud contained in sections 17a(2) and 17a(4) of the Bankruptcy Act, 11 U.S.C. § 35 (repealed). The Bankruptcy Act was repealed by the Bankruptcy Reform Act of 1978, Pub.L. 95–598, § 401(a), 92 Stat. 2682. The exceptions to discharge involving fraud as set forth in section 523 of the Bankruptcy Code are substantially similar to those in section 17 of the Act. *See generally Brown v. Felsen*, 442 U.S. at 129, n. 1, 99 S.Ct. at 2208, n. 1.

ceedings [of any court of any state] shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738.

■ The United States Court of Appeals for the Sixth Circuit has recently summarized the Constitutional and statutory principles of full faith and credit as they relate to the preclusive effect of prior state court rulings in the context of nondischargeability actions in a subsequent bankruptcy case:

> The doctrine of collateral estoppel applies in dischargeability actions under 11 U.S.C. § 523(a). In determining whether to accord preclusive effect to a state-court judgment, we begin with the fundamental principle that "judicial proceedings [of any court of any state] shall have the same full faith and credit in every court within the United States ... as they have by law or usage in the courts of such State ... from which they are taken." 28 U.S.C. § 1738. The principles of full faith and credit reflected in § 1738 generally require "that a federal court must give to the state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Bankruptcy courts' exclusive jurisdiction does not alter this rule.

*Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 53 (6th Cir.1995) (citations omitted). However, the analysis does not end here. If the relevant state law would give preclusive effect to the prior state court judgment, then the federal court must determine whether there is a federal policy exception to the application of the full faith and credit doctrine:

> In cases involving claims within the exclusive jurisdiction of the federal courts, a court determining whether or not to apply collateral estoppel first must determine if a state court judgment would receive preclusive effect in the state where it was rendered. If the answer to this question is yes, the court must give that judgment

preclusive effect unless it determines that an exception to § 1738 should apply. This determination turns on the question of whether "the concerns underlying a particular grant of exclusive jurisdiction justify a finding of an implied partial repeal of § 1738. To resolve this question, courts must consider the particular federal statute and the issue involved in the federal proceeding, and keep in mind that "the primary consideration must be the intent of Congress."

*Bursack*, 65 F.3d at 53 (citing *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 386, 105 S.Ct. 1327, 1335, 84 L.Ed.2d 274 (1985)).

In accordance with the principles of full faith and credit, this court must determine the preclusive effect, if any, of the prior Michigan judgments under Michigan law. Assuming there is a preclusive effect in this adversary proceeding, the court must then decide whether federal policy creates an exception to the doctrine of full faith and credit.

**C. *Is the Debtor Collaterally Estopped by the Prior Criminal Conviction?***

■ As a result of the altercation with Vogel, Kalita was convicted on June 28, 1985 of "Felonious Assault" under the applicable Michigan statute:

> Felonious Assault—Any person who shall assault another with a gun, revolver, pistol, knife, iron bar, club, brass knuckles or other dangerous weapon, but without intending to commit the crime of murder, and without intending to inflict great bodily harm less than the crime of murder, shall be guilty of a felony.

Mich.Comp.Laws Ann. § 750.82.

Vogel observes that the crime of Felonious Assault is a crime of specific intent which requires that the defendant possess the requisite intent to injure the victim. *See* Plaintiff's Brief at 8 (citing *People v. Crook*, 162 Mich.App. 106, 412 N.W.2d 661 (1987); *People v. Davis*, 126 Mich.App. 66, 337 N.W.2d 315 (1983), appeal after remand, 135 Mich.

App. 630, 354 N.W.2d 287 (1984); *People v. Frazier*, 100 Mich.App. 776, 300 N.W.2d 408 (1980); *Fish v. People*, 62 F.2d 659 (6th Cir.1933)). Thus, Vogel asserts that a conviction for the crime of Felonious Assault under Michigan law necessarily entails a finding that the injuries caused by Kalita were "willful and malicious" and therefore entitled to collateral estoppel effect in this nondischargeability litigation.

■ Because section 523(a)(6) is phrased in the conjunctive, the court must determine that the injury caused by the debtor was *both* willful and malicious, in order for a debt to be deemed nondischargeable. *See, e.g., Sparks v. Adams (In re Adams)*, 147 B.R. 407, 412 (Bankr.W.D.Mich.1992). The Bankruptcy Code does not define the terms "willful and malicious"; however, the United States Court of Appeals for the Sixth Circuit has held that the term "willful" refers to a deliberate or intentional act that necessarily leads to injury. *Perkins v. Scharffe*, 817 F.2d 392 (6th Cir.1987), *cert. denied*, 484 U.S. 853, 108 S.Ct. 156, 98 L.Ed.2d 112 (1987). *See also Frantz v. Schuster (In re Schuster)*, 171 B.R. 807, 811 (E.D.Mich.1987) (criminal conviction for specific intent crime involving child molestation was "willful and malicious"). With respect to the malice requirement, the United States Supreme Court has stated, "Malice, in common acceptation, means ill will against a person; but in its legal sense it means a wrongful act, done intentionally, without just cause or excuse." *Tinker v. Colwell*, 193 U.S. 473, 486, 24 S.Ct. 505, 508, 48 L.Ed. 754 (1904) (quoted in *Sparks v. Adams*, 147 B.R. at 416–17). It can be easily inferred that a conviction for Felonious Assault under Michigan law necessarily includes a determination that the defendant's conduct was willful and malicious within the meaning of section 523(a)(6).

Kalita does not dispute that Felonious Assault is a crime of specific intent under Michigan law. Instead, Kalita argues that her state court conviction has no preclusive effect in this adversary proceeding because the conviction was based on a plea of *nolo contendere*. According to Black's Law Dictionary, *nolo contendere* is Latin phrase meaning "I will not contest it," and is defined as follows:

> [A] plea in a criminal case which has a similar legal effect as pleading guilty. Type of plea which may be entered with leave of court to a criminal complaint or indictment by which the defendant does not admit or deny the charges, though a fine or sentence may be imposed pursuant to it. *The principal difference between a plea of guilty and a plea of nolo contendere is that the latter may not be used against the defendant in a civil action based upon the same acts . . . .*

BLACK'S LAW DICTIONARY 1048 (6th ed. 1990) (emphasis added) (citations omitted).

In describing the effect of a *nolo contendere* plea, the Michigan Supreme Court has stated:

> The primary purpose of a plea of *nolo contendere* is to avoid potential future repercussions which would be caused by the admission of liability, particularly the repercussions in potential future civil litigation. A *nolo contendere* plea does not admit guilt, it merely communicates to the court that the criminal defendant does not wish to contest the state's accusations and will acquiesce in the imposition of punishment. To the extent a *nolo contendere* plea is an implicit admission of guilt, it is such an admission only for the purposes of the criminal proceeding in which the plea is entered.

*Lichon v. American Universal Ins. Co.*, 435 Mich. 408, 421, 459 N.W.2d 288 (1990).

In *Lichon*, the plaintiff filed an insurance claim for fire damage to commercial property. The insurer initially rejected the claim and the plaintiff filed suit seeking payment under the policy. The plaintiff eventually reached a settlement with his insurance company; however, before the settlement was paid, the plaintiff was charged with the crime of burning real property under Michigan Law. The plaintiff entered a plea of nolo

contendere to the lesser charge of attempted burning of real property and was convicted and sentenced to a year in jail. Because of the plaintiff's plea and conviction, the insurance company refused to honor the settlement and moved for summary judgment in the pending civil action. The insurance company argued that the plaintiff was barred from recovering on his claim by the anti-fraud provisions in the policy and that the plaintiff was collaterally estopped by his conviction from denying his role in setting the fires.

The trial court granted the insurer's motion for summary judgment and the Michigan Court of Appeals affirmed. However, the Michigan Supreme Court reversed and held as follows:

> The plaintiff is not precluded from litigating the issue whether he burned his business because his *nolo contendere* plea to a charge of attempted burning of real property is not an admission of guilt that can be used against him in subsequent civil or criminal litigation.

*Lichon*, 435 Mich. at 415, 459 N.W.2d 288. In support of this holding, the majority opinion relied in part on Rule 410 of the Michigan Rules of Evidence which provides:

> Except as otherwise provided in this rule, evidence of a plea of guilty, later withdrawn, or a plea of *nolo contendere*, or of an offer to plead guilty or *nolo contendere* to the crime charged or any other crime, or of statements made in connection with any of the foregoing pleas or offers, *is not admissible* in any civil or criminal proceeding against the person who made the plea or offer.

*Lichon*, 435 Mich. at 418, 459 N.W.2d 288 (quoting MRE 410) (emphasis added by Michigan Supreme Court). The Michigan Supreme Court also relied on an opinion from the United States Court of Appeals for the Fifth Circuit which described the effect of a *nolo contendere* plea as follows:

> A plea of *nolo contendere* performs a specific function. As a statement of the

defendant for which he may, in another proceeding or on another occasion be called upon to account, it admits nothing. It is the same as a plea of not guilty.

*Lichon*, 435 Mich. at 421, 459 N.W.2d 288 (1990) (quoting *United States v. Williams*, 642 F.2d 136, 139 (5th Cir., 1981)). In addition, the majority opinion in *Lichon*, also cited a leading commentary on the subject:

> It has been established in the federal courts that the plea of *nolo contendere* "does not create an estoppel, but ... is an admission [of guilt] for the purposes of the case" in which the plea is made. In any subsequent action, whether arising out of the same facts or not, neither the *nolo* plea nor the conviction based on the plea may be admitted as either an admission or proof of guilt.

*Lichon*, 435 Mich. at 422, 459 N.W.2d 288 (quoting 2 WEINSTEIN & BERGER, EVIDENCE, ¶ 410[06], pp. 410–44 to 410–45).

Having concluded that the plea of *nolo contendere* did not create an estoppel, the *Lichon* majority further determined that the plaintiff was not collaterally estopped by the *conviction* that had resulted from the plea. In so holding, the Michigan Supreme Court concluded that the criminal conviction did not satisfy the doctrine of "mutuality." The Michigan Supreme Court described the mutuality requirements as follows:

> The doctrine of mutuality of estoppel requires that in order for a party to estop an adversary from relitigating an issue that party must also have been a party, or a privy to a party, in the previous action. In other words, '[t]he estoppel is mutual if the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him.' Although there is a trend in modern law to abolish the requirement of mutuality, this Court reaffirmed its commitment to that doctrine in 1971 in *Howell* [*v. Vito's Trucking & Excavating Co.*, 386 Mich. 37, 191 N.W.2d 313]. Mutuality of estoppel remains the law in this jurisdiction and bars American Universal from using Lichon's criminal conviction to settle an issue in this civil case,

since the insurance company was not a party to the criminal case and would not have been bound by an acquittal had one resulted.

*Lichon,* 435 Mich. at 427–428, 459 N.W.2d 288 (citations omitted).

In the pending adversary proceeding, Vogel argues that the issue of malicious intent was "actually litigated" in the 1985 criminal case because the Michigan Court Rules of 1985 required that the trial court conduct a hearing to determine the accuracy of the conviction prior to allowing Kalita to enter her plea of *nolo contendere. See* Plaintiff's Brief, p. 5 (citing MCR 6.101 (1985)). A similar argument was explicitly rejected by a majority of the Michigan Supreme Court in *Lichon:*

> The taking of Lichon's nolo contendere plea cannot be considered "actual litigation," at least not in terms of collateral estoppel jurisprudence. The essence of a nolo contendere plea is in its name, "nolo contendere," or "I will not contest it." If the charges are uncontested, they are necessarily unlitigated. Neither can we accurately say that the procedures followed by the judge in establishing a factual basis for taking a nolo contendere plea constitute "actual litigation."

*Lichon,* 435 Mich. at 429, 459 N.W.2d 288.

Based on Michigan law, this court holds that a plea of *nolo contendere* and a conviction based on the plea have no preclusive effect on subsequent civil litigation. Therefore, Kalita's 1985 conviction for Felonious Assault has no collateral estoppel effect in this nondischargeability action.

### D. *Is the Debtor Collaterally Estopped by the Prior Civil Default Judgment?*

■ Vogel also relies on the 1985 civil judgment against Kalita to argue that Kalita

is collaterally estopped from denying that her conduct was "willful and malicious." Kalita responds that the state court civil judgment was silent with respect to the basis for liability and, therefore, cannot be used for purposes of collateral estoppel. The "Default Judgment" dated November 22, 1985, provides in full:

> This matter having come before the Court and the Court being advised in the premises;
>
> IT IS HEREBY ORDERED AND ADJUDGED that Judgment shall be and hereby [is] entered in favor of the Plaintiff and against the Defendant in the above captioned case in the sum of *$25,000, plus taxable costs and interest.*

Plaintiff's Brief, Exhibit D.[6]

Although the judgment itself is silent with respect to the grounds for imposing liability, it is clear that the 1985 civil judgment was based upon the common law tort of assault and battery. Vogel's state court civil complaint specifically alleges that "the Defendant did assault and batter the Plaintiff with a knife" and that as a result, Vogel suffered bodily injuries and incurred a variety damages. *See* Plaintiff's Brief, Exhibit A. Most importantly, the two page complaint is limited to the *single claim* for assault and battery and no other basis of liability is alleged.[7]

■ Assault and battery is an intentional tort under Michigan law. *Cf. Frankenmuth Mut. Ins. Co. v. Beyer,* 153 Mich.App. 118, 395 N.W.2d 36 (1986) (insurance company not required to defend insured who allegedly committed intentional tort of assault and battery). Therefore, a civil judgment for assault and battery necessarily includes a finding of

---

6. The quotation in the text is taken from a photocopy of the judgment rendered by the Michigan Circuit Court for the County of Livingston. *See* Plaintiff's Exhibit D. The underlined language of the quotation represents the part of the judgment which appears to be handwritten. Kalita has not contested the accuracy, authenticity or admissibility of Vogel's exhibits for purposes of this summary judgment proceeding.

7. This is not an instance in which the underlying judgment was based on a multi-count complaint, thereby making it impossible to determine the grounds upon which the judgment was rendered. *See, e.g., Wheeler v. Laudani,* 783 F.2d 610 (6th Cir.1986) (Court reverses grant of summary judgment in favor of creditor in nondischargeability action where it was unclear whether jury verdict in libel action was based on intentional or reckless misconduct).

intentional misconduct that could be described as "willful and malicious." Nevertheless, Kalita argues that the civil judgment has no preclusive effect because it was obtained by default. According to Kalita's affidavit, she was incarcerated at the time the default judgment was entered on November 25, 1985. *See* Kalita Affidavit, ¶ 15.[8] Moreover, Kalita further alleges that she "took no steps to defend Ms. Vogel's civil suit, because she had given the complaint to her attorney who told her he would take care of it." *Id.*, ¶ 16. Therefore, the civil judgment against Kalita is a "true default judgment," i.e., judgment was entered solely because Kalita failed to file an answer or take any steps to defend herself in the state court action.

### 1. *Sixth Circuit Precedent*

There are two major opinions from the United States Court of Appeals for the Sixth Circuit which address the collateral estoppel effect of a default judgment rendered by a state court in a subsequent federal action between the same parties. *See Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981); *Rally Hill Productions, Inc. v. Bursack (In re Bursack),* 65 F.3d 51 (6th Cir.1995). Discussion of these cases is instructive.

In *Spilman,* the Sixth Circuit was faced with the issue of whether a bankruptcy court should decide each dischargeability action *de novo,* or whether the parties could be collaterally estopped by a prior state court judgment regarding the nature of the debt. The plaintiff in *Spilman* was a judgment creditor who had received a large award in Ohio state court for personal injuries she suffered when she was struck by an automobile that was operated by an allegedly intoxicated defendant. After the defendant filed for bankruptcy, the plaintiff brought a nondischargeability action. The bankruptcy court granted the defendant's motion for summary judgment stating that the plaintiff was collaterally estopped from asserting that the defendant's conduct was willful because the defendant had previously been found liable for negligence as opposed to an intentional tort. The district court affirmed and the plaintiff filed a *pro se* appeal with the Sixth Circuit.[9]

■ The Sixth Circuit reversed the lower courts and held that the plaintiff was not collaterally estopped from arguing that the defendant's conduct had been willful and malicious. As an initial matter, the court of appeals held that collateral estoppel could be applied in bankruptcy actions to preclude the relitigation of factual issues that were previously decided in a state court action—provided that all the requirements of collateral estoppel were met. *Spilman,* 656 F.2d at 228. The *Spilman* court provided the following guidelines for the use of collateral estoppel in dischargeability proceedings: "Collateral estoppel requires that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome." *Id.* at 228 (citations omitted).

The *Spilman* court held that collateral estoppel was not applicable in the bankruptcy case because the prior state court judgment was ambiguous with respect to the issue of whether the defendant's conduct was willful and malicious and because the bankruptcy court had not considered any other pleadings in the state court record. The court of appeals reasoned, "[t]he person asserting the estoppel has the burden of proving the re-

---

8. Kalita's allegation in her affidavit is also supported by the Judgment of Sentence dated June 28, 1985 which provides that Kalita was to be immediately sentenced to custody for a period of not less than 15 months and not more than 48 months. *See* Plaintiff's Exhibit B.

9. The *Spilman* case was somewhat unusual because it was the defendant-debtor who was attempting to invoke the doctrine of collateral estoppel as a defense to a nondischargeability action. More typically, as is the case here, it is the *plaintiff* judgment creditor who seeks to make offensive use of collateral estoppel to establish that the prior judgment against the defendant-debtor cannot be discharged. *Spilman* was also exceptional in that the *pro se* plaintiff-appellant prevailed on appeal and succeeded in obtaining a reversal of the lower court decisions.

quirements of estoppel have been met. If the state court record does not show the issue was *necessarily and actually litigated* in the prior non-bankruptcy proceeding, collateral estoppel is inapplicable." *Id.* at 229 (citations omitted) (emphasis added). The Sixth Circuit concluded that the defendant had failed to carry its burden of establishing the elements of collateral estoppel. The Sixth Circuit reversed and remanded the case. The bankruptcy court was directed to examine the entire record of the state court proceeding to determine whether or not the issue of willful and malicious conduct had actually been litigated in state court and was necessary to the outcome of the case. If so, the plaintiff could be estopped by the prior state court ruling; if not, the plaintiff should be allowed to proceed with her nondischargeability action and to present evidence before the bankruptcy court that the defendant's conduct was willful and malicious. *Id.*

In this adversary proceeding, Kalita seizes upon the language in the *Spilman* opinion in which the court of appeals stated: "If important issues were not actually litigated in the prior proceeding, *as is the case with a default judgment,* then collateral estoppel does not bar relitigation in the bankruptcy court." *Spilman,* 656 F.2d at 228 (citations omitted) (emphasis added). Kalita argues that because the state civil judgment in favor of Vogel was a default judgment, actual litigation did not occur.

Vogel relies on a more recent Sixth Circuit decision which held that a debtor was collaterally estopped from relitigating the issue of fraud based on a prior state court judgment. *In re Bursack,* 65 F.3d 51 (6th Cir.1995). In *Bursack,* the plaintiff filed suit against the defendant in Tennessee state court seeking to recover damages in connection with several loan transactions in which the defendant had allegedly made false representations and submitted false financial statements to the plaintiff. The defendant hired an attorney, filed an answer and counterclaim, and participated in two depositions during which he was represented by counsel. However, on the eve of trial, the defendant announced

that he would not appear. The trial proceeded in his absence. The trial court submitted the fraud claim to the jury. A verdict was rendered against the defendant and punitive damages were awarded.

Thereafter, the defendant filed a chapter 7 case. The plaintiff brought a nondischargeability action alleging that the debt was for money obtained by fraud or false financial statements. The bankruptcy court granted the plaintiff's motion for summary judgment and held that the debt was nondischargeable based on the collateral estoppel effect of the prior Tennessee state court fraud judgment. The district court affirmed and the defendant-debtor appealed.

On appeal, the defendant argued that he was not estopped from contesting the issues of fraud and false financial statements because he had not participated in the trial in Tennessee state court. The defendant argued that the fraud issues were not actually litigated. The Sixth Circuit rejected this argument and determined that the prior judgment would be given preclusive effect under Tennessee law, notwithstanding the defendant's failure to appear at trial. *Bursack,* 65 F.3d at 54. Based upon its review of Tennessee law, the court of appeals concluded that "[e]ven a default judgment satisfies Tennessee's 'actually litigated' requirement." *Id.* Because the prior judgment would have preclusive effect in state court, principles of full faith and credit required that the judgment also have preclusive effect in the subsequent bankruptcy litigation. *Id.*

The *Bursack* court observed that "[o]ur inquiry is somewhat complicated by the discussion in *Spilman v. Harley* of collateral estoppel in the context of a bankruptcy proceeding." *Id.* After quoting from the *Spilman* opinion, the *Bursack* court acknowledged "[t]hus, *Spilman,* at least arguably, created a bright-line rule that default judgments can never have preclusive effect in bankruptcy proceedings regardless of their treatment under relevant state law." *Id.*

The *Bursack* court further noted that the lower courts were split on their interpreta-

tion of *Spilman* and questioned the continuing vitality of *Spilman* in light of more recent Supreme Court decisions involving full faith and credit. Nevertheless, the court stopped short of declaring that *Spilman* was no longer valid. Instead, the *Bursack* court chose to distinguish the *Spilman* case on the grounds that the Tennessee fraud judgment against the defendant was not a "true default" because the defendant had filed an answer and had participated in the civil litigation right up to the eve of trial:

> [U]nder the circumstances of this case, we are not required to determine the extent to which the *Spilman* rule may have been overruled. That is, we need not address the question of whether a true default judgment, e.g., where the defendant does not file an answer, has collateral estoppel effect in a later bankruptcy proceeding. The state-court judgment at issue here is not a default judgment as contemplated by the *Spilman* court. Indeed, the attributes listed by *Spilman* as conditions for a judgment having preclusive effect are present in this case.

> Here, Rally Hill's state-court complaint raised the issues of fraud and use of false financial statements. The issues were actually litigated to the extent that Bursack retained an attorney, filed an answer, asserted cross-claims, and participated in discovery, which included his submitting to two depositions.

*Bursack*, 65 F.3d at 54. Finally, the *Bursack* court expressly declined to decide the broad issue of whether or not a federal policy required an exception to the application of full faith and credit to state court default judgments where the fraud issue was "actually litigated" in the state court proceeding. *Id.* at 54–55.

*Spilman* and *Bursack* are not easily reconciled. In *Spilman*, the Sixth Circuit explicitly stated that a default judgment would not have a collateral effect on a subsequent action in bankruptcy court. *Spilman*, 656 F.2d at 228. Although this statement in *Spilman* can be characterized as nonbinding "dicta," it

is unequivocal and directly on point. In *Bursack*, the Sixth Circuit questioned this portion of its prior ruling in *Spilman*, but managed to finesse the issue by finding that the prior state court judgment was not a "true default" because the defendant had meaningfully participated in the prior litigation and was bound by the outcome. *Bursack*, 65 F.3d at 54. *Bursack* left open the question of whether a true default judgment would have preclusive effect in a subsequent bankruptcy proceeding.

Neither *Spilman* nor *Bursack* involved a "true default" in which the debtor failed to file an answer or defend the prior state court action. In each case, the defendant had participated to a certain degree in the defense of the state court litigation prior to entry of a judgment. In contrast, this court is squarely confronted with the issue of whether a true default judgment in a Michigan civil case has a preclusive effect in a subsequent nondischargeability action in a federal bankruptcy case.

### 2. *Possible Preclusive Effect of Default Judgments Under Michigan Law*

#### a. *Analytical Framework to Ascertain State Law*

■ The Sixth Circuit Court of Appeals has recently set forth the analytical approach for federal courts to follow when attempting to decide questions of state law:

> [A] federal court must apply the law of the state's highest court. If, however, the state's highest court has not decided the applicable law, then the federal court must ascertain the state law from "all relevant data." Relevant data include the state's appellate court decisions:

>> [W]e are mindful that an intermediate appellate court's judgment that announces a rule of law is "a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise."

Finally, relevant data also include the state's supreme court *dicta*, restatements of law, law review commentaries, and the majority rule among other states.

*Garden City Osteopathic Hospital v. HBE Corp.*, 55 F.3d 1126, 1130 (6th Cir.1995) (citations omitted). In accordance with *Garden City*, this court will first examine opinions from the Michigan Supreme Court regarding the collateral estoppel effect of a default judgment.[10] To the extent that the Michigan Supreme Court has not rendered a definitive opinion on this issue, this court will also consider other "relevant data" including opinions of the Michigan Court of Appeals, the Michigan Court Rules, legal commentaries, and federal court opinions interpreting Michigan law.

**b. Michigan Cases Interpreting Michigan Law**

Similarly to the United States Supreme Court, the Michigan Supreme Court differentiates between the doctrines of *res judicata* and collateral estoppel. *See supra* Part III.A. In general, the Michigan Supreme Court uses the term *"res judicata"* to refer to "claim preclusion" as opposed to "collateral estoppel" which refers to "issue preclusion." *People v. Gates*, 434 Mich. 146, 154, n. 7, 452 N.W.2d 627 (1990) (citing *Jones v. Chambers*, 353 Mich. 674, 91 N.W.2d 889 (1958)). In *People v. Gates*, the Michigan Supreme Court succinctly defined the principle of collateral estoppel as follows:

> Collateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties where the prior proceeding culminated in a valid, final judgment and the issue was (1) actually litigated and (2) necessarily determined.

*People v. Gates*, 434 Mich. at 154, 452 N.W.2d 627 (citing *Jacobson v. Miller*, 41 Mich. 90, 93, 1 N.W. 1013 (1879); *Howell v.*

*Vito's Trucking & Excavating Co.*, 386 Mich. 37, 42, 191 N.W.2d 313 (1971); Restatement Judgments, § 68, p. 293; 1 Restatement Judgments, 2d, p. 250). With respect to the first requirement, the Court stated:

> In analyzing whether an issue was "actually litigated" in the prior proceeding, the Court must look at more than what has been plead and argued. We must also consider whether the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue.

*Gates*, 434 Mich. at 156–57, 452 N.W.2d 627 (citing *Blonder–Tongue Laboratories, Inc. v. Univ. of Illinois Foundation*, 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971)). In regards to the second requirement, the *Gates* Court stated, "An issue is necessarily determined only if it is 'essential' to the judgment." *Gates*, 434 Mich. at 158, 452 N.W.2d 627 (citing 1 Restatement Judgments, 2d, § 27, p. 250, comment h, p. 258). Applying these general rules, the majority in *Gates* concluded that a jury verdict of "no jurisdiction" in a child-protective probate proceeding did not bar a subsequent prosecution for criminal sexual conduct, even though proceedings arose from the same factual allegations.

Because the *Gates* case did not involve the collateral estoppel effect of a prior default judgment, it is not directly analogous to the issue before this court. However, in one of the cases cited by *Gates* majority, the Michigan Supreme Court refused to apply the doctrine of collateral estoppel in a case that is somewhat analogous to a default judgment. *See Jacobson v. Miller*, 41 Mich. 90, 1 N.W. 1013 (1879).

*Jacobson v. Miller* involved a landlord-tenant dispute. The landlord sued two tenants for back rent that had allegedly accrued during the first eighteen months of a three-year lease. Apparently, the tenants disputed

---

**10.** In *Garden City*, the Sixth Circuit was called upon to decide an issue of Michigan law in a case where jurisdiction was based on diversity of citizenship. In this proceeding, federal jurisdiction is predicated upon the bankruptcy jurisdiction under section 1334 of the Judicial Code as opposed to diversity jurisdiction under section 1331. *See* 28 U.S.C. §§ 1331, 1334. Nevertheless, for purposes of discerning the applicable Michigan law, the analytical approach is the same.

the existence of the lease. However, they failed to deny the existence of the lease under oath in their answer as was required under the then applicable court rule.[11] Thus, the tenants were not allowed to contest the validity of the lease at trial. A judgment was entered in favor of the landlord. Thereafter, the landlord filed a second suit seeking to recover the balance of the rent that had accrued during the remainder of the three year lease. Only one of the tenants responded, but this time he attached an affidavit to his answer in which he denied that he had ever signed, executed or delivered the lease. Therefore, under the applicable rule, the landlord was obligated to prove the execution of the lease. However, the landlord argued that the execution and validity of the lease was established by the prior judgment. The trial court agreed and instructed the jury accordingly. The jury ruled in favor of the landlord. The tenant then appealed to the Michigan Supreme Court.[12]

Justice Cooley framed the issue on appeal as follows: "The question presented by this record is whether the circuit judge was right in holding that, by the former suit, the execution of the lease was conclusively established for the purposes of any subsequent suit for the recovery of rent claimed to have accrued under it." *Jacobson v. Miller*, 41 Mich. at 93, 1 N.W. 1013. Justice Cooley then described the general principles that governed the case:

> There are two matters in respect to which an adjudication once made may be conclusive: *first*, the subject matter involved in the litigation; *second*, the point of fact or of law, or of both, which was necessarily adjudicated in determining the issue upon the subject matter in litigation.

*Jacobson v. Miller*, 41 Mich. at 93, 1 N.W. 1013. Justice Cooley seems to suggest that these principles are equally applicable to default judgments:

> Nor, as regards the subject matter of the suit, is it of the least importance, when the question comes up again collaterally, whether the suit was contested or was suffered to go by default; whether, if it was contested, all the questions were raised by the pleadings, or upon the trial, that might have been raised; or whether the court was right or wrong in its conclusions upon the fact or upon the law. It is sufficient that the case proceeded to judgment according to the forms of law, and that the court rendered a judgment that by its terms or legal effect covered the controversy.

*Jacobson v. Miller*, 41 Mich. at 94, 1 N.W. 1013 (citing *Hazen v. Reed*, 30 Mich. 331 (1874)). Without using the terms "*res judicata*" or "collateral estoppel," Justice Cooley nevertheless recognized a distinction between the two concepts:

> Of course there could have been no rents if there was no lease, and therefore it is said that the right to rents in the first suit necessarily involved the existence of the lease and its execution by the parties sued. Assuming this to be correct, it may still be necessary to distinguish between the subject matter of the former suit, namely, the rents claimed, and the point involved in the right to them, namely the execution and delivery of the lease. The plaintiff insists that the prior adjudication is conclusive as respects both; the defendant Jacobson insists that it is conclusive only as respects the sum for which judgment was recovered.

11. This nineteenth-century rule of pleading survives in the current version of the Michigan Court Rules which pertain to "Pleading Special Matters" including an "Action on Written Instrument." The current court rule provides in relevant part:

> (1) In an action on a written instrument, the execution of the instrument and the handwriting of the defendant are admitted unless the defendant specifically denies the execution or the handwriting and supports the denial with an affidavit filed with the answer. The court, may, for good cause, extend the time for filing the affidavits.

MCR 2.112(E)(1).

12. At the time the case was decided, the Michigan Supreme Court was the only appellate court in Michigan. The Michigan Court of Appeals was not established until 1963.

*Jacobson v. Miller*, 41 Mich. at 95, 1 N.W. 1013. In other words, Justice Cooley makes a distinction: the prior default judgment would have a *res judicata* effect that would bar further litigation regarding the amount and validity of the prior judgment; however, the judgment would not necessarily have a collateral estoppel effect with respect to the underlying factual issues concerning the execution and delivery of the lease. Justice Cooley further opined that if the validity of the lease had been actually litigated in the prior suit, the outcome of the issue would have been binding on the parties in the subsequent litigation:

> It is not denied by the defendant that if the execution and delivery of the lease had been disputed in the first suit, the determination of the issue would have been conclusive upon the parties in any subsequent litigation involving the right to rents under the same lease.
>
> \* \* \* \* \* \*
>
> But *the execution of the lease was not denied* in the former suit. *No issue was made upon it*, and the defendant, by not denying it, suffered a default in respect to it which left it wholly outside the issue made and actually passed upon. *Consequently it was not and could not have been considered by the court* as a point in which that suit was open to controversy.

*Jacobson v. Miller*, 41 Mich. at 95–96, 1 N.W. 1013 (emphasis added). Thus, because the defendants had not placed the validity of the lease in issue in the prior suit, there was no collateral estoppel effect in the later suit. Furthermore, Justice Cooley concluded that the failure to properly assert the defense in the prior action did not preclude the defendant from raising it in the subsequent suit. In support of this conclusion, Justice Cooley quoted a lengthy excerpt from a United States Supreme Court opinion written by another eminent nineteenth-century jurist, Stephen Field. In the seminal case of *Cromwell v. County of Sac*, 94 U.S. 351, 24 L.Ed. 195 (1877), Justice Field wrote:

> Various considerations other than the actual merits, may govern a party in bringing forward grounds of recovery or defense in one action, which may not exist in another action upon a different demand, such as the smallness of the amount or the value of the property in controversy, the difficulty of obtaining the necessary evidence, the expense of the litigation, and his own station in time. A party acting upon considerations like these ought not to be precluded from contesting in a subsequent action other demands arising out of the same transaction. *A judgment by default only admits for the purpose of the action the legality of the demand or claim in suit; it does not make the allegations of the declaration or complaint evidence in an action upon a different claim.*

*Cromwell v. County of Sac*, 94 U.S. at 356 (quoted in *Jacobson v. Miller*, 41 Mich. at 96, 1 N.W. 1013 (emphasis added by this court)). The Michigan Supreme Court reversed the lower court's judgment in favor of the landlord and ordered that a new trial be held in which the defendant would be allowed to contest the validity of the lease.

Technically speaking, *Jacobson v. Miller* did not involve a default judgment; it is, nevertheless, roughly analogous to the proceeding before this court. In both cases, the plaintiff is attempting to use a prior adverse judgment to preclude the defendant from raising defenses in a pending case arising from the same operative facts. In *Jacobson v. Miller*, the defendant was precluded from asserting one of his defenses in the first suit because he failed to supply an affidavit disputing the validity or authenticity of the lease. In this proceeding, Kalita failed to assert her defenses in the prior suit because she failed to answer the complaint. In both cases, the defendants did not "actually litigate" their defenses in the prior state court action. Thus, Justice Cooley's opinion in *Jacobson v. Miller*, strongly suggests that the Michigan Supreme Court would not give collateral estoppel effect to a true default judgment.

*Jacobson v. Miller* is over one hundred years old and it is possible that the Michigan

Supreme Court could have changed its views in the interim. However, *Jacobson v. Miller* has never been overruled and as recently as 1958, the Michigan Supreme Court described it as "Michigan's leading case on the doctrine of res adjudicata [sic]." *Jones v. Chambers*, 353 Mich. 674, 680, 91 N.W.2d 889 (1958). As recently as 1990, the Michigan Supreme Court cited to *Jacobson v. Miller* in support of its definition of collateral estoppel. *See supra, Gates*, 434 Mich. at 154, 452 N.W.2d 627.

Moreover, the Michigan Supreme Court has continued to adhere to the substantive ruling in *Jacobson v. Miller*, by consistently enforcing the "actually litigated" requirement in cases applying the doctrine of collateral estoppel. For instance, in describing the scope of collateral estoppel, the Michigan Supreme Court has stated:

> The Judgment is conclusive between the parties in such a case as to questions actually litigated and determined by the judgment. It is not conclusive as to questions which might have been but were not litigated in the original action. This is the doctrine of collateral estoppel.

*Howell v. Vito's Trucking and Excavating Company*, 386 Mich. 37, 42, 191 N.W.2d 313 (1971) (quoting Restatement of the Law of Judgments, § 68 at 293, 294). Likewise, in *Senior Accountants, Analysts and Appraisers Association v. City of Detroit*, 399 Mich. 449, 249 N.W.2d 121 (1976), the Michigan Supreme Court once again quoted an excerpt from the Restatement of Judgments:

> Where a question of fact essential to the judgment is actually litigated and determined by a valid and final judgment, the determination is conclusive between parties in a subsequent action.

*Senior Accountants*, 399 Mich. at 458, 249 N.W.2d 121 (quoting Restatement of the Law of Judgments, § 68 at 293). In the *Lichon* case discussed *supra*, the Michigan Supreme Court relied on the current version of the Restatement for the same proposition:

> Under 1 Restatement Judgments, 2d, § 27, p. 250, collateral estoppel applies "[w]hen an issue of fact or law is *actually litigated* and determined by a valid final judgment...." (Emphasis added.) Comment e to this section clarifies this rule: "A judgment is not conclusive in a subsequent action as to issues which might have been but were not litigated and determined in the prior action."

*Lichon*, 435 Mich. at 428, 459 N.W.2d 288 (emphasis supplied by Michigan Supreme Court). The same comment that is quoted by the Michigan Supreme Court in *Lichon* further provides that, "In the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated. Therefore, the rule of this Section [issue preclusion] does not apply with respect to any issue in a subsequent action." 1 Restatement Judgments, 2d, § 27, comment e, at 257. Thus, although the Michigan Supreme Court has not directly held that a true default judgment will not give rise to collateral estoppel, it seems likely that it would adopt such a rule if it were presented with the issue.[13]

■ Pursuant to the Sixth Circuit's analysis in the *Garden City* case, this court should be primarily concerned with the Michigan Supreme Court's interpretation of Michigan law. However, because the Michigan Supreme Court has not rendered an explicit holding on this issue, it is appropriate for this court to consider other sources of law such as decisions of the Michigan Court of Appeals. *See generally, Garden City*, 55 F.3d at

---

**13.** This court has not found any cases decided by Michigan courts that hold that a "true default" gives rise to collateral estoppel in subsequent cases. The cases cited by Vogel are inapposite. In *Prawdzik v. Heidema Brothers, Inc.*, 352 Mich. 102, 89 N.W.2d 523 (1958), the Michigan Supreme Court held that the doctrine of *res judicata* barred a litigant from bringing a subsequent action challenging the validity of a stipulated settle-

ment that was placed on the record in a previous trial. There was no such stipulation or settlement between Vogel and Kalita. Moreover, as noted above, the doctrines of *res judicata* and collateral estoppel are separate and distinct. Therefore, the *Prawdzik* case is not applicable to the issue before this court which involves the application of collateral estoppel as opposed to *res judicata*.

1130.[14]

The Michigan case which most strongly implies that collateral estoppel applies to true default judgments is *Braxton v. Litchalk*, 55 Mich.App. 708, 223 N.W.2d 316 (1974). In *Braxton*, the plaintiff, who was the lessor of an automobile, sued defendant Braxton for negligent operation of his automobile and resultant damages to the plaintiff's leased automobile. Defendant Braxton failed to answer the complaint. The trial court entered a default judgment against the defendant in the amount of $205.76. Subsequently, the defendant moved to set aside the default. At first, the trial court set aside the default, but upon further consideration, reinstated the default judgment because good cause had not been shown. *Id.* at 712, n. 1, 223 N.W.2d 316. Approximately one month later, defendant Braxton, and others, filed a lawsuit against the plaintiff lessor in the first suit, and others. Upon the lessor's motion for accelerated judgment, the second trial court held that Braxton was barred by collateral estoppel from suing the lessor who had obtained the default judgment in the first action.

Upon appeal, the Michigan Court of Appeals affirmed as to the lessor. The court of appeals stated:

In view of the extensive attention given this matter by the trial court, the final entry of a default judgment and failure of defendant to appeal therefrom we must accept as true the matters pleaded in the Bendix complaint and must examine the merits of the case before us. Our conclusion in this regard should not be construed as going so far as to hold that every default judgment, no matter under what circumstances it is taken, may result in collateral estoppel, but only that in the instant case the issues were sufficiently litigated to make the doctrine of collateral estoppel apply.

*Braxton v. Litchalk*, 55 Mich.App. at 717, 223 N.W.2d 316. Thus, in *Braxton*, the Michigan Court of Appeals expressly stated that not all default judgments would give rise to collateral estoppel, but only those in which the factual issue had been "sufficiently litigated" in the underlying case. Although the Michigan Court of Appeals gave collateral estoppel effect to a default judgment in *Braxton*, because defendant Braxton moved to set aside the default, the court apparently concluded that sufficient participation occurred to meet the "actually litigated" requirement. Therefore, even though no answer had been filed,

**14.** In support of her motion, Vogel relies on the Michigan Court of Appeals decision in *Detroit Automobile Inter–Insurance Exchange v. Higginbotham*, 95 Mich.App. 213, 290 N.W.2d 414 (1980) in which the court stated, "The doctrine of collateral estoppel applies to a default judgment." 95 Mich.App. at 219, 290 N.W.2d 414 (citing *Perry & Derrick Co. v. King*, 24 Mich. App. 616, 180 N.W.2d 483 (1970)). In *Higginbotham*, the plaintiff insurance company brought a declaratory judgment action seeking to establish that there was no coverage for injuries incurred by a woman who was shot by her husband. The wife argued that the insurance company was collaterally estopped from denying coverage because a default judgment had previously been entered against her husband. In rejecting the collateral estoppel argument, the court of appeals stated, "Even assuming for the purpose of argument that plaintiff [insurance company] ... sufficiently participated in the action to become bound by the default decree, the collateral estoppel effect thereof did not extend to the issue of noncoverage under [the husband's] policy." 95 Mich.App. at 219, 290 N.W.2d 414. Thus, the *Higginbotham* case does *not* support the conclu-

sion that a true default will give rise to collateral estoppel under Michigan law.

Likewise, the *King* case cited by the *Higginbotham* court is also distinguishable. In *King*, the plaintiff obtained a default judgment against a flour company and an individual who had personally guaranteed the company's debt. Thereafter, it was discovered that the company had not been properly incorporated and the plaintiff brought a second action against the company's individual shareholders seeking to hold them personally liable. The court of appeals held that the second action against the individuals was barred by the doctrine of *res judicata* because the plaintiff could have included these individuals in the original action, but had failed to do so. The court further held that the doctrine of *res judicata* applied even though the prior judgment was a default judgment. Thus, *King* involved the *res judicata* effect of a default judgment as opposed to the collateral estoppel effect of the judgment. The *King* case does *not* hold that a default judgment will give rise to the application of *collateral estoppel* under Michigan law.

the court of appeals seems to assume a "true default" judgment was not involved because of "the extensive attention given to this matter" by the first trial court.[15]

### c. *Michigan Court Rules Pertaining to Default Judgments*

The current version of the Michigan Court Rules were formally adopted by the Michigan Supreme Court in 1985. Those rules provide another source of law from which this court may seek analytical guidance. The Michigan Court Rules do not specifically address the preclusive effects of default judgments under Michigan law. Nevertheless, the procedures for the entry of default judgments are somewhat helpful regarding the issue of what constitutes a "true default" under Michigan law.

The entry of default judgments is governed by Michigan Court Rule 2.603 which provides that judgments may be entered by either the court or the court clerk. Subsection (A)(1) of the Rule suggests that in the case of a "true default", the clerk "must" enter judgment against the defaulting party:

> (1) If a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules, and that fact is made to appear by affidavit or otherwise, *the clerk must enter the default of that party.*

MCR 2.603(A)(1) (emphasis added). Subsection (B)(2) provides:

> (2) *Default Judgment Entered by Clerk.* On request of the plaintiff supported by an affidavit as to the amount due, the clerk may sign and enter judgment for that amount and costs against the defendant, if
>
> (a) the plaintiff's claim against a defendant is for a sum certain, or for a sum that can by computation be made certain,
>
> (b) *the default was entered because the defendant failed to appear,* and

> (c) the defaulted defendant is not an infant or incompetent person.

The clerk may not enter or record a judgment based on a note or other written evidence of indebtedness until the note or writing is filed with the clerk for cancellation, except by special order of the court.

MCR 2.603(B)(2) (emphasis added). This procedure whereby the clerk enters the default judgment, seems to be applicable in those cases involving a "true default," where the defendant fails to respond to the complaint. In all other cases, default judgments are entered by the court and not the clerk. Michigan Court Rule 2.603(B)(3) provides in part:

> (3) *Default Judgment Entered by Court.* *In all other cases* the party entitled to a judgment by default must apply to the court for the judgment.
>
> . . . . .
>
> (b) If, in order for the court to enter judgment or carry it into effect, it is necessary to
>
> (i) take an account,
>
> (ii) determine the amount of damages,
>
> (iii) establish the truth of an allegation by evidence, or
>
> (iv) investigate any other matter,
>
> the court *may* conduct hearings or order references it deems necessary and proper, and shall accord a right of trial by jury to the parties to the extent required by the constitution.

MCR 2.603(B)(3)(b) (emphasis added). Under the foregoing rule, a Michigan trial court "may" conduct an evidentiary hearing prior to entering a default judgment, but it is not required to do so.

In cases where the default judgment is entered as a ministerial function by the court clerk, it should not give rise to collater-

---

15. For the reasons discussed in Part III.D.3., *infra,* and in light of Michigan Supreme Court decisions, this court believes that the *Braxton* conclusion on this issue is, at best, highly questionable.

al estoppel in a subsequent proceeding because it does not satisfy the "actually litigated" requirement. In contrast, in cases where the record clearly indicates that an evidentiary hearing or trial was held, after an answer was filed, then the "default" judgment should be given collateral estoppel effect even if the defendant did not attend the hearing. Thus, this dichotomy in the Michigan Court Rules supports the view that "true defaults" should not be given collateral estoppel effect under Michigan law.

■ In this adversary proceeding, it appears that the default judgment dated November 22, 1985 was entered by the presiding judge and not the court clerk. The judgment includes the standard preamble, "This matter having come before the Court and the Court being advised in the premises; . . ." However, Vogel has not provided a transcript of the hearing at which the default judgment was granted, and the judgment itself is silent with respect to the basis for the judgment. The failure to produce the entire state court record could be grounds for denying the application of collateral estoppel under *Spilman;* especially where, as here, the judgment itself is ambiguous.

As noted above, however, the undisputed facts in this case establish that the sole reason for the 1985 default judgment was Kalita's failure to answer the complaint. Vogel has not alleged that the state court judge made any specific findings regarding Kalita's conduct. Indeed, because there was no answer by Kalita the state court was not required to make any explicit findings of fact. Therefore, under these circumstances, a transcript of the state court default hearing would probably not provide any additional guidance to this court regarding the nondischargeability issue. Although the 1985 civil judgment was entered by the state court judge, it probably could have been issued by the clerk since it appears that Kalita "failed to plead or otherwise defend" against Vogel's

complaint. *See* Mich.Comp.Laws Ann. § 2.603(A)(1).[16] Therefore, the judgment against Kalita was a "true default" even though it was entered by the state court judge, and not the court clerk.

### d. *Federal Cases Interpreting Michigan Law*

In addition to the Michigan appellate cases, and the Michigan court rules, this court may also examine the opinions of other federal courts that have been called upon to determine issues of Michigan law. In particular, several bankruptcy courts in the Eastern District of Michigan have addressed the issue that is currently before this court, i.e., the preclusive effect of a Michigan civil default judgment on a subsequent nondischargeability proceeding. These cases are helpful both as to their interpretation of Michigan law and their general approach to the issue of the collateral estoppel effect of default judgments. All of these cases were decided after the Sixth Circuit's decision published its decision in *Spilman* in 1981, but before that court issued its opinion in *Bursack* in 1995.

In *Bend v. Eadie (In re Eadie),* 51 B.R. 890 (Bankr.E.D.Mich.1985), the bankruptcy court held that, under Michigan law, a default judgment for fraud would be given preclusive effect. Therefore, the debtor was estopped from subsequently denying that the debt was nondischargeable in bankruptcy. In *Eadie,* it was alleged the defendant had fraudulently obtained money from the plaintiff that was supposed to be donated to charity. The Michigan state court entered a default judgment as a sanction against the defendant for failing to cooperate in discovery. *Id.* at 891. Thereafter, the defendant filed a chapter 7 bankruptcy case. The plaintiff filed an adversary proceeding asserting the judgment debt was nondischargeable under section 523(a)(2). The plaintiff moved for summary judgment argu-

---

**16.** The Michigan Court Rules of 1985 became effective March 1, 1985; and therefore, were in effect at the time that Vogel obtained her default judgment against Kalita. The prior General Court Rules of 1963 also contained a similar provision which allowed for the entry of default judgments. *See* GCR 1963, 520 and DCR 520 (repealed).

ing that defendant was estopped from relitigating the fraud issue determined by the prior state court judgment.

The bankruptcy court reviewed the Sixth Circuit's opinion in *Spilman* and acknowledged the apparent *per se* rule that default judgments should not be given collateral estoppel effect in subsequent bankruptcy cases. Nevertheless, the bankruptcy court was persuaded by a subsequent opinion from another bankruptcy court which concluded that *Spilman* was no longer valid in light of recent pronouncements from the Supreme Court dealing with full faith and credit. *Eadie,* 51 B.R. at 892–93 (citing *In re Byard,* 47 B.R. 700 (Bankr.M.D.Tenn.1985)). Therefore, the *Eadie* court proceeded to analyze the preclusive effect of default judgments under Michigan law:

> Under Michigan law, the doctrine of collateral estoppel applies only where the same ultimate issues underlying a first action are involved in a second action, where the parties have had a full opportunity to litigate the ultimate issue in the former action, and where there is mutuality of estoppel such that both litigants in the second suit are bound by the judgment rendered in the first suit. *Further, collateral estoppel applies to default judgments; however, the default judgment is conclusive only to those matters essential to support the judgment.*

*Eadie,* 51 B.R. at 894 (citations omitted) (emphasis added). The *Eadie* court also quoted from a Michigan Court of Appeals decision recognizing the preclusive effect of some default judgments under Michigan law. *Eadie,* 51 B.R. at 894 (quoting *Braxton v. Litchalk,* 55 Mich.App. 708, 717, 223 N.W.2d 316 (1974)). Applying these principles of Michigan law, the *Eadie* court concluded that the prior state court fraud judgment would be given preclusive effect by Michigan courts even though it was, in effect, a default judgment.

It should be stressed that *Eadie* did not involve a "true default" because there was participation by the defendant in the state court litigation. This is evident because the state court entered a default judgment as a discovery sanction after the defendant appeared and presumably filed an answer to the complaint. Thus, *Eadie* is distinguishable from the proceeding before this court which involves a true default. More importantly, the Michigan Court of Appeals opinion cited in *Eadie* is careful to limit its holding and expressly states that not all default judgments will be given preclusive effect, only those in which the issue was "sufficiently litigated" so that collateral estoppel would apply.

In a subsequent opinion, the Bankruptcy Court for the Eastern District of Michigan applied a similar analysis, but reached a different result. *Day v. Manuel (In re Manuel),* 76 B.R. 105 (Bankr.E.D.Mich.1987). In *Manuel,* the plaintiff had entered into a settlement and consent judgment in which the plaintiff agreed to dismiss her fraud claims with prejudice. Thereafter, the defendant filed for bankruptcy and the plaintiff filed an adversary proceeding seeking to have the debt declared nondischargeable under section 523(a)(2). Defendant argued that the nondischargeability claim was barred by *res judicata* because the fraud issue had been dismissed with prejudice under the consent agreement. Applying Michigan law, the bankruptcy court determined that a consent judgment did not have collateral estoppel effect (issue preclusion), but could be used to invoke *res judicata* (claim preclusion). *Manuel,* 76 B.R. at 107.

Nevertheless, the bankruptcy court ultimately concluded that the consent judgment would not be given preclusive effect in the bankruptcy proceeding because it fell within an implied exception to the application of full faith and credit. *Manuel,* 76 B.R. at 108. In support of this conclusion, the *Manuel* court quoted at length from *Brown v. Felsen,* 442 U.S. 127, 138, 99 S.Ct. 2205, 2212–13, 60 L.Ed.2d 767 (1979), a case in which it was held that *res judicata* does not bar litigation of the dischargeability issue in bankruptcy where the parties had previously entered into a stipulated state court judgment. *Manuel*

concluded that the prior state court consent judgment dismissing the fraud claim with prejudice did not preclude relitigation of the fraud issue in the nondischargeability action. *Manuel*, 76 B.R. at 108.

Because *Manuel* involved a consent judgment as opposed to a default judgment, it is distinguishable from the issue before this court. By definition, a consent judgment requires some participation in the litigation. Therefore, it is not equivalent to a "true default." Nevertheless, even though both parties were actively involved in the state court litigation, the bankruptcy court in *Manuel* refused to give preclusive effect to the consent judgment in the subsequent nondischargeability action.

In yet another bankruptcy case from the Eastern District of Michigan, the court held that a defendant-debtor was not precluded from contesting a nondischargeability action under sections 523(a)(4) and (6), notwithstanding the fact that the defendant-debtor had previously accepted a mediation award which had resulted in a judgment against the defendant. *Industrial Ins. Services, Inc. v. Zick (In re Zick),* 100 B.R. 867 (Bankr. E.D.Mich.1989). In *Zick,* the bankruptcy court determined that a judgment resulting from a mediation award was comparable to a consent judgment under Michigan law and, thus, would not have a preclusive effect on the subsequent nondischargeability proceeding in the bankruptcy court, other than to establish the amount of the debt. In so holding, the bankruptcy court noted that, "Entry of a judgment based upon acceptance of a mediation award is an administrative or ministerial act involving no exercise of judgment or discretion." *Zick,* 100 B.R. at 869 (citing *Muntean v. City of Detroit,* 143 Mich. App. 500, 505, 372 N.W.2d 348 (1985)). Thus, the bankruptcy court concluded that the entry of judgment following mediation was tantamount to a consent judgment which does not have collateral estoppel effect under Michigan law. *Zick,* 100 B.R. at 869 (citing *American Mut. Liab. Ins. Co. v. Michigan Mut. Liab. Co.,* 64 Mich.App. 315, 327, 235 N.W.2d 769 (1975), *lv. denied,* 395 Mich. 830

(1976)). *Zick* does not involve a true default judgment and, therefore, is distinguishable from this adversary proceeding.

The Bankruptcy Court for the Eastern District of Michigan has applied the doctrine of collateral estoppel in a nondischargeability action where the debt arose from a state court judgment against the debtor-defendant for wrongful conversion of corporate funds. *In re Khullar,* 139 B.R. 428 (Bankr. E.D.Mich.1992). In *Khullar,* the debtor-defendant was sued in a state court civil action for wrongful conversion of medical insurance payments from a company in which the defendant was a principal. The defendant failed to testify in his own defense at trial and a judgment was entered against him. In the subsequent nondischargeability action, the bankruptcy court granted summary judgment against the defendant-debtor and held that he was collaterally estopped based on the prior state court judgment.

In contrast to the proceeding currently pending before this court, *Khullar* did not involve a true default judgment. Rather, the facts presented in that opinion indicate that the defendant had presumably filed an answer in the state court action, but had either failed to appear at trial or had simply failed to testify. *Khullar,* 139 B.R. at 429. It therefore appears that the relevant issues were necessarily litigated in the state court trial. Thus, the procedural background in *Khullar* is strikingly similar to the facts involved in *Bursack* and, in both cases, the courts concluded that the defendant's failure to attend trial did not preclude the application of collateral estoppel.

In *Montgomery v. Kurtz (In re Kurtz),* 170 B.R. 596 (E.D.Mich.1994), the bankruptcy court held that the debtor was not estopped from relitigating the issue of fraud in a nondischargeability proceeding, notwithstanding a prior default judgment against him in Michigan state court. In *Kurtz,* the plaintiff brought a civil suit alleging fraud in connection with the sale of the defendant's house. It is unclear whether the defendant filed an answer in the state court action. Apparent-

ly, the Michigan trial court entered a default judgment in favor of the plaintiff because the defendant failed to appear at a hearing; however, there was no record of the hearing at which the default judgment was entered. The defendant filed a chapter 7 case and the plaintiff brought an adversary proceeding alleging that the judgment debt was nondischargeable under Section 523(a)(2)(A). The plaintiff sought summary judgment arguing that the defendant was estopped from relitigating the fraud issue.

The bankruptcy court framed the issue as follows, "The primary issue in this case concerns whether a state court default judgment qualifies as "actually litigated" for purposes of collateral estoppel." *Kurtz*, 170 B.R. at 597. As an initial matter, the bankruptcy court concluded that it was not required to grant full faith and credit to state court judgments because of a judicially created exception which applies to dischargeability actions in bankruptcy. *Id.* at 599. The court then considered *Spilman* and *Eadie* which suggested that *Spilman* was no longer good law. The *Kurtz* court rejected the analysis in *Eadie* and concluded that *Spilman* remained binding precedent within the circuit. *See Kurtz*, 170 B.R. at 600 ("On balance, proper respect for precedent, and in particular, the literal words of the Sixth Circuit requires this Court to therefore conclude that default judgments per se cannot be the basis for collateral estoppel."). Nevertheless, the *Kurtz* court concluded that "*Spilman* should not be taken literally ... [and] there may be some default judgments that qualify as a basis for application of collateral estoppel principles." *Kurtz*, 170 B.R. at 601.

Relying in part on *Spilman*, the *Kurtz* court established its own four part test to be

applied to determine when a default judgment could be used for purposes of collateral estoppel.[17] Applying this test to the facts before it, the *Kurtz* court noted that under the applicable Michigan Court Rule, the trial court may conduct an evidentiary hearing in connection with the entry of a default judgment in order to determine damages or establish the truth of an allegation:

> Thus, for a Michigan state court default judgment to have collateral estoppel effect, the court must have, among other things, evidence establishing the truth of the allegations in the complaint being used as the basis for the non-dischargeability action in the Bankruptcy Court when granting the default judgment.

*Kurtz*, 170 B.R. at 600 (citing MCR 2.603(B)). The *Kurtz* court concluded that the state court default judgment should not be given preclusive effect because neither party had obtained a record of the hearing at which the default judgment was entered. In the absence of a transcript, the plaintiff had attempted to submit an affidavit from the state court judge; however, the bankruptcy court determined that the affidavit was insufficient to establish compliance with MCR 2.603(B)(3) or to meet the standard enunciated by the bankruptcy court. *Kurtz*, 170 B.R. at 602. Accordingly, the bankruptcy court denied the plaintiff's motion for summary judgment.

In an opinion that was issued shortly after *Kurtz*, the Bankruptcy Court for the Eastern District of Michigan ruled that a default judgment obtained by the victim of a convicted child molester collaterally estopped a defendant-debtor from denying that the debt was nondischargeable. *Frantz v. Schuster (In the Matter of Schuster)*, 171 B.R. 807

---

**17.** The four-part test used in *Kurtz* included the following factors:

(1) The entire record in the state or other court leading to the default judgment involved must have been before the Bankruptcy Court: and

(2) That record in the state or other court must not be ambiguous as to the facts and theories upon which the default judgment was granted, and those facts must have been necessary to the outcome; and

(3) The basis for the state or other court judgment must be the same as that relied on for non-dischargeability under the Bankruptcy Code; and,

(4) At the very least the procedure which led to the entry of the default judgment in the state court must have strictly followed that court's applicable rules.

*Kurtz*, 170 B.R. at 601.

(Bankr.E.D.Mich.1994). The defendant in *Schuster* was a former school superintendent who was convicted of criminal sexual assault under Michigan law in connection with his abuse of a fourteen year old boy. The bankruptcy court opinion does not indicate what type of plea the defendant entered in response to the criminal charges filed against him. It is unclear whether a trial was held in the criminal case. *Schuster* at 809.

Following the defendant's criminal conviction, the victim and his father filed a civil suit seeking damages for fraud, assault, and intentional infliction of emotional distress. *Id.* at 809 and 810, n. 2. The defendant was initially represented by counsel and, presumably, filed an answer to the complaint. However, the defendant's attorney subsequently withdrew from the case, and a default judgment was entered after the defendant failed to appear at both a scheduled settlement conference and at trial. *Id.* at 813. Prior to entering a default judgment the state court held a bench trial in which the court heard testimony and reviewed affidavits concerning the defendant's conduct and found the defendant's actions "to be willful and wanton in his abuse of young Frantz." *Id.* at 812.

The defendant filed for bankruptcy protection, and the plaintiff brought a motion to lift the automatic stay to pursue collection of the default judgment. Plaintiff also filed an adversary proceeding to establish the debt as nondischargeable under section 523(a)(6). The bankruptcy court framed the issue as follows:

> This case presents the issue of whether a plaintiff-creditor, who obtains a state court default judgment, may preclude the debtor from contesting the default judgment in a subsequent bankruptcy proceeding to the extent to which the liability created by the default is nondischargeable under the Bankruptcy Code.

*Schuster*, 171 B.R. at 808–809. In ruling that the debt was nondischargeable, the bankruptcy court concluded that the defendant's conduct was both willful and malicious within the meaning of section 523(a)(6). *Id.*

at 812. With respect to the issue of collateral estoppel, the court held that "pursuant to Michigan law the default judgment should be granted preclusive effect." *Id.* at 813. The bankruptcy court rejected the defendant's argument that he had not had an opportunity to litigate the issue fully in the state court proceeding. The court noted that the defendant had received notice of both the settlement conference and the trial, but had failed to appear and had failed to appeal the default judgment. *Id.* at 813. A close reading of the opinion indicates that the debtor participated in the state court litigation at least until his counsel withdrew from the case.

The plaintiff in *Schuster* invoked the doctrine of collateral estoppel based on the defendant's prior criminal conviction under Michigan law and a civil default judgment for injuries caused by the crime. In contrast, Kalita entered a plea of *nolo contendere*, thereby preventing the collateral use of the conviction in subsequent proceedings. There is nothing in the bankruptcy court's opinion in *Schuster* that would indicate that the defendant-debtor's criminal conviction resulted from a *nolo contendere* plea.

Moreover, it appears that the defendant had filed an answer in the state court civil action in *Schuster*, and that an evidentiary hearing was held resulting in a specific finding of "willful and wanton" misconduct on the part of the defendant. It appears obvious based on the uncontroverted evidence in the state court record that the plaintiff was entitled to judgment on the merits of his claims and the only reason the judgment was characterized as a "default judgment" was that the defendant had failed to appear at trial. In this respect, *Schuster* is very similar to the procedural facts in *Bursack* and *Khullar*.

At first glance, the foregoing cases from the Eastern District of Michigan seem to reach contradictory results regarding the collateral estoppel effect of a default judgment under Michigan law. *Compare Schuster* (default judgment creates collateral estoppel) and *Eadie* (same) and *Khullar* (same) *with Kurtz* (default judgment does not give rise to

collateral estoppel) and *Manuel* (consent judgment does not give rise to collateral estoppel) and *Zick* (judgment based on mediation award does not give rise to collateral estoppel). However, upon careful reading the cases can be reconciled by focusing on the "actually litigated" requirement for the application of collateral estoppel under Michigan law.

In those cases in which the bankruptcy court held that the defendant-debtor was collaterally estopped by the prior Michigan judgment, there was at least some participation by the defendant in the state court litigation. Although the decisions are somewhat unclear, it appears in *Schuster, Eadie* and *Khullar* that each defendant had answered the allegations of the complaint prior to entry of the default judgment. Thus, the issues were "actually litigated" for purposes of establishing collateral estoppel. In contrast, the plaintiff in *Kurtz* could not meet the actually litigated requirement, because she failed to produce an adequate state court record to show that an answer had been filed or evidentiary hearing was held. Likewise, the state court judgments at issue *Manuel* and *Zick* were not based on evidentiary findings. Therefore, the bankruptcy courts refused to give these judgments preclusive effect, even though there had been some degree of participation by the defendants in the state court litigation. None of these cases involved a "true default" in which the defendant had failed to even file an answer to the state court complaint.

### 3. Under Michigan Law, What Level Of Participation By A Defendant Is Necessary To Meet The "Actually Litigated" Requirement For Collateral Estoppel?

Upon consideration of the above Michigan Supreme Court decisions, the Michigan Court of Appeals' decisions, the current Michigan Court Rules and federal decisions, by the Sixth Circuit Court of Appeals and the Michigan bankruptcy courts, interpreting Michigan law on collateral estoppel, i.e., the "relevant data", this court has gleaned how the Michigan Supreme Court would decide the legal issue presented. The highest court of Michigan would very probably decide that a default judgment, entered after the defendant has filed an answer which contests material facts, is entitled to collateral estoppel effect. To the contrary, when no answer has been filed, i.e., in the instance of a "true default," collateral estoppel does not apply.

Under common law, a "joinder in issue" occurs when one of the parties, commonly the defendant, "joins in or accepts an issue in fact tendered by the opposite party", normally the plaintiff. BLACK'S LAW DICTIONARY 836 (6th ed. 1990).[18] Upon such joinder of issue, the disputed facts are identified and must necessarily be decided by the court, whether upon judgment at trial or in connection with a default judgment.

The current Michigan Court Rules also mandate such a procedure. "Pleading" includes, among other things, a complaint and an answer to the complaint. MCR 2.110. Allegations in a complaint "must be clear, concise and direct." MCR 2.111(A)(1). A complaint must contain, among other things, "a statement of facts, without repetition, on which the pleader relies in stating the cause of action." MCR 2.111(B)(1). As to each allegation in the complaint, the answer must "state an explicit admission or denial." MCR 2.111(C)(1).[19] Therefore, any subsequent judgment must necessarily adjudicate the contested factual issues. It is for this reason, the Michigan Court Rules require the judge, rather than the court clerk, to render a default judgment after an answer has been

---

**18.** This concept of joinder is also sometimes referred to as "similiter," whereby one party expressly accepts an issue of act raised by the opposite party. BLACK'S LAW DICTIONARY 1383 (6th ed. 1990).

**19.** However, the answer may state "no contest". MCR 2.111(C)(2). "A pleading of no contest ... permits the action to proceed without proof of

the claim" and "has the effect of an admission only for purposes of the pending action." MCR 2.111(E)(3). Therefore "no contest" in a civil action is equivalent to *"nolo contendere"* in a criminal case, and therefore there exists no collateral estoppel effect. *See supra*, Part III.C.

914

filed. MCR 2.603(B)(3). *See supra*, Part III.D.2.c.

*Jacobson v. Miller*, 41 Mich. 90, 1 N.W. 1013 (1879), written by Justice Cooley, is the key authority utilized in this court's analysis.[20] Because the opinion is older, unless read carefully, it is somewhat difficult to understand. Boiled down, it stands for the proposition that unless a proper answer is filed which identifies facts necessarily in issue, a subsequent judgment is not entitled to collateral estoppel effect because the factual issues were not contested and, hence, not actually litigated. This conclusion is based, in part, upon the following quote:

> It is said by SANFORD, J., in *Dickinson v. Hayes*, 31 Conn., 417: "Verdicts and judgments are conclusive evidence of the facts which they profess to find, and which are necessary to uphold them, because those facts were properly in issue, or the subject of inquiry, and were upon such inquiry judicially determined. But in regard to facts about which the court could have made no inquiry, no inference can be drawn from its determination."

*Jacobson v. Miller*, 41 Mich. at 98, 1 N.W. 1013.

■■■ It appears that *Jacobson v. Miller* adopts the quoted analysis of *Dickinson*. This is shown by the statement: "Cases may be found which are inconsistent with these views, and equally, as we think, inconsistent with [the] principle [of collateral estoppel]." *Jacobson v. Miller*, 41 Mich. at 99, 1 N.W. 1013. The clear inference is that cases which disagree with *Dickinson* are inconsistent with the governing legal principle, and thus are wrongly decided. When a fact is not denied because the defendant has failed to file a proper answer in a prior lawsuit, there can be no collateral estoppel effect. This

conclusion is supported by the following discussion:

> But the execution of the lease was not denied in the former suit. No issue was made upon it, and the defendant, by not denying it suffered a default in respect to it which left it wholly outside the issue made and actually passed upon. Consequently it was not and could not have been considered by the court as a point in which that suit was opened to controversy.

*Jacobson v. Miller*, 41 Mich. at 95–96, 1 N.W. 1013. When the defendant fails to file an answer, facts are not contested or at issue. Therefore, a subsequent "true default" judgment is not entitled to collateral estoppel effect.

■■■ To the contrary, when a fact is denied in the defendant's answer, it is at issue. When a judgment is entered, the contested fact is adjudicated. It does not matter if the judgment is entered after a trial or by default. This conclusion is also supported by the following discussion in *Jacobson v. Miller*:

> Nor, as regards the subject matter of the suit, is it of the least importance, when the question comes up again collaterally, *whether the suit was contested or was suffered to go by default;* whether, if it was contested, all the questions were raised by the pleadings, or upon the trial, that might have been raised; or whether the court was right or wrong in its conclusions upon the fact or upon the law. It is sufficient that the case proceeded to judgment according to the forms of law, and that the court rendered a judgment that by its terms or legal effect covered the controversy.

*Jacobson v. Miller*, 41 Mich. at 94, 1 N.W. 1013 (emphasis added).[21]

There are no Michigan Supreme Court cases which have been found which have

---

**20.** This Michigan Supreme Court decision is discussed in Part III.D.2.b. *supra*. As noted above, *Jacobson v. Miller* was relied upon by the Michigan Supreme Court as recently as 1990 and it is still good law.

**21.** Although it is not necessary to address for purposes of this court's decision, this discussion

also stands for the proposition that when a contested trial occurs, actual litigation of facts not directly raised by the pleadings may occur. This is consistent with the concept that factual and legal issues may be tried by either express or implied consent. MCR 2.118(C) (amendments to conform to evidence). *Cf.* FED R.CIV.PRO. 15(b) (same); FED.R.BANKR.PRO. 7015 (same).

implicitly overruled *Jacobson v. Miller*, or are inconsistent with the above analysis of the applicability of collateral estoppel in instances when a default judgment has been rendered. To the extent Michigan Court of Appeals may have ruled collateral estoppel may apply, even in absence of an answer being filed and facts not at issue, i.e., a "true default" situation, those cases are inconsistent with *Jacobson v. Miller* and are wrongly decided.[22] The decisions by the federal courts which have addressed the Michigan law of collateral estoppel do not undercut this court's analysis.[23] Moreover, this court's analysis is consistent with both the Michigan Court Rules and the Restatement of Judgments. *See supra* Parts III.D.2.b. and c.

Returning to this adversary proceeding, in the prior state court civil action, Kalita did not file an answer to Vogel's complaint. Therefore, the facts were never at issue. Because the operative facts were not contested when the state court entered a default judgment, no actual litigation of the facts was necessary and "actual litigation" did not take place. The "true default" judgment which was entered in the state court civil action is therefore not entitled to collateral estoppel effect.

### E. *Federal Policy Exception to Full Faith and Credit*

█ Assuming this court has erred in discerning what the Michigan Supreme Court would decide, and that collateral estoppel may apply in instances where a defendant has not answered a complaint, this court would decline to give full faith and credit to Michigan law.

Recently, the United States District Court for the Eastern District of Michigan ruled that there is a judicially created exception to 28 U.S.C. § 1738 for dischargeability proceedings in bankruptcy. *See Wood v. Dealers Financial Services, Inc.*, 199 B.R. 25 (E.D.Mich.1996). In *Wood*, the plaintiff creditor filed a complaint in Oakland County Circuit Court alleging claims against the defendant-debtor for conversion, misappropriation, fraud and conspiracy to defraud. The defendant-debtor failed to answer the complaint. A default judgment was entered against him. Approximately six years later, the defendant-debtor filed a motion in state court to set aside the judgment; however, the motion was denied.[24] Thereafter, the defendant-debtor filed a chapter 7 bankruptcy case. In response, the judgment creditor initiated an adversary proceeding seeking to except its debt from discharge. The bankruptcy court granted the creditor's motion for summary judgment and the defendant-debtor appealed.

The district court framed the issue as "whether a bankruptcy court may apply collateral estoppel principles to a default judg-

---

**22.** For example, *Braxton v. Litchalk*, 55 Mich. App. 708, 223 N.W.2d 316 (1974) recognizes that facts must be "actually litigated" to apply collateral estoppel. That court apparently determined that a motion to set aside a true default judgment, which is subsequently denied, constitutes sufficient litigation to apply collateral estoppel. However, *Braxton* is unclear as to whether the facts were at issue by the defendant's answer or only whether good cause to set aside the default was considered in the first action. *Braxton* does not consider or cite *Jacobson v. Miller*. Also, *Braxton* relies upon *Perry v. King*, 24 Mich.App. 616, 180 N.W.2d 483 (1970), which was decided on *res judicata* grounds, to support its conclusion. As discussed above in Part III.A., *res judicata* and collateral estoppel are different doctrines each of which has its own focus.

**23.** The decisions by the Sixth Circuit Court of Appeals, discussed in Part III.D.1. *supra*, are consistent with the analysis. The *Spilman v. Harley* requirement that "actual litigation" occur is not met in the case of a true default and thus, under *Spilman*, there is no collateral estoppel effect. *Bursack*, which declined to address the issue of a "true default," is consonant with the analysis because collateral estoppel was applied in that case when the party participated in the action by, among other things, filing an answer to the complaint. In those instances when Michigan bankruptcy courts have applied collateral estoppel in a default setting, discussed in Part III.D.2.d. *supra*, it appears that an answer was filed which placed contested facts at issue.

**24.** In refusing to set aside the judgment, the Oakland County Court apparently concluded that the defendant-debtor had received adequate notice of the prior lawsuit based on the fact that the defendant's father had informed him by telephone that the plaintiff was trying to serve him with a complaint. *Wood*, 199 B.R. at 26.

ment obtained pursuant to Michigan law." *Wood,* 199 B.R. at 26. After discussing full faith and credit, the court refined the issue further:

> Thus, the first issue this court must address is whether an exception to [28 U.S.C.] § 1738 exists for the determination by a bankruptcy court of the dischargeability of a debt under [11 U.S.C.] § 523. In other words, must a bankruptcy court, in determining the dischargeability of a debt, use state law to decide whether to give preclusive effect to a state default judgment.

*Wood,* 199 B.R. at 27. The *Wood* court noted that several courts had held that there was no federal policy exception to the application of full faith and credit, even where the prior state court judgment was obtained through default. *See, e.g., Nourbakhsh v. Gayden (In re Nourbakhsh),* 162 B.R. 841 (9th Cir. BAP 1994), *aff'd,* 67 F.3d 798 (9th Cir.1995); *In re Byard,* 47 B.R. 700 (Bankr.M.D.Tenn.1985); *In re Eadie,* 51 B.R. 890 (Bankr.E.D.Mich. 1985). Nevertheless, the *Wood* court rejected these cases on the basis that they were inconsistent with the Supreme Court's ruling in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979) and the Sixth Circuit's decision in *Spilman v. Harley,* 656 F.2d 224 (6th Cir.1981). The district court instead chose to follow those bankruptcy court decisions that have recognized a federal policy exception to the application of full faith and credit in nondischargeability actions. *See, e.g., Bay Area Factors, a Division of Dimmitt & Owens Financial, Inc. v. Calvert (In re Calvert),* 177 B.R. 583 (Bankr. E.D.Tenn.1995); *In re Kurtz,* 170 B.R. 596 (Bankr.E.D.Mich.1994); and *Ferguson v. Hall (In re Hall),* 95 B.R. 553 (Bankr. E.D.Tenn.1989).

Having determined that the bankruptcy court was not bound by state law regarding the preclusive effect of the prior state court default judgment, the district court then concluded that the prior judgment against the defendant-debtor was not binding because it did not satisfy the "actually litigated" test of *Spilman v. Harley.* The district court, how-

ever, was careful to limit the scope of its ruling:

> This court need not decide whether all default judgments necessarily fail the "actually litigated" standard. In the present case, there is absolutely no evidence of any actual litigation in support of the underlying nondischargeability issues. The record before this court cannot support a finding that the § 523 nondischargeability issues raised by appellee DFS were actually litigated in the state circuit court. The only issues apparently addressed were whether service was proper, and whether the appellant had actual notice. As to these two issues, the matter is clearly settled—service was proper and Wood had notice. However, there is no indication that any discussion of ruling was issued on the merits of the complaint, i.e., the allegations of fraud. Thus, DFS fails to satisfy the "actually litigated" requirement set forth in *Spilman.*

*Wood,* 199 B.R. at 29. Accordingly, the district court reversed the bankruptcy court's grant of summary judgment and remanded the case for further proceedings on the creditor's nondischargeability action.

Inexplicably, the *Wood* court fails to address the Sixth Circuit's recent opinion in *Bursack.* As noted above, the *Bursack* court upheld a grant of summary judgment in favor of a creditor. *See supra,* Part III.D.1. In so holding, the court determined that the debtor was barred by collateral estoppel from relitigating the fraud issue that was subject of a prior state court default judgment. At first blush, it would appear that *Wood* is inconsistent with *Bursack.* Upon closer examination, however, the cases can be reconciled. First, *Bursack* expressly refrained from deciding the issue of whether or not there was a federal policy exception to the normal operation of 28 U.S.C. § 1738 in the case of a true default judgment. *Bursack,* 65 F.3d at 54–55. Thus, because the issue was left open, the *Wood* court was free to decide that such an exception was appropriate.

Second, *Bursack* did not involve a "true default;" rather, the defendant "vigorously

litigated the case right up until the eve of trial" and the trial proceeded in the absence of the defendant. Therefore, the *Bursack* court concluded that defendant was bound by the prior state court default judgment, because "the fraud issue was raised, actually litigated, and necessary to the judgment in state court." *Bursack,* 65 F.3d at 55. In contrast, the *Wood* case involved a "true default." The defendant did not answer the creditor-plaintiff's complaint in the state civil action. Therefore, while avoiding a blanket rule with respect to default judgments, the *Wood* court concluded that the fraud issue was not actually litigated in the prior case. Accordingly, this court believes that *Wood* is not inconsistent with *Bursack.*

■ In sum, even if this court's analysis is wrong (*see supra* Part III.D.3.) and Michigan law gives collateral estoppel effect in an instance when a defendant fails to file an answer in a prior action resulting in a default judgment, i.e., a "true default," a federal policy exception exists. This policy exception is supported by a valid federal purpose. Neither a creditor nor a debtor should be required to litigate their dischargeability issues in a prebankruptcy lawsuit. Also, the defendant-debtor should not be forced to litigate in state court simply to preserve defenses to a subsequent nondischargeability action in bankruptcy. *Calvert,* 177 B.R. at 586–87 (citing *In re Hall,* 95 B.R. at 557–58). *See also Wood,* 199 B.R. at 28.[25]

### IV. CONCLUSION

The prior Michigan state court criminal conviction, based upon a *nolo contendere* plea, is not entitled to collateral estoppel effect under Michigan law. The prior Michigan state court default judgment in the civil action, entered because of failure to answer the complaint, i.e., a "true default", is not entitled to collateral estoppel effect under Michigan law. Even assuming a "true default" judgment is entitled to collateral estoppel effect under Michigan law, such a judgment is not entitled to full faith and credit because a valid federal purpose exception exists.[26]

Plaintiff Vogel's motion for summary judgment is therefore denied. An order shall be entered accordingly.

---

**25.** This court's alternative holding, i.e., full faith and credit shall not be given to true default judgments, is limited. The federal purpose exception to full faith and credit does not apply when a party files an answer in the state court litigation and subsequently suffers a default judgment. In that circumstance, the party embarked upon litigation, raised contested facts, and participated, to some extent, in the prior proceeding. Such a participating party was not required or forced to litigate facts pertaining to a future nondischargeability proceeding—a conscious decision was made to do so. The ramification is that, when the party abandons the litigation and a default judgment is entered, collateral estoppel may apply in the subsequent bankruptcy nondischargeability action.

**26.** Having concluded that the original 1985 default judgment does not create an estoppel, this court similarly concludes that the subsequent default judgment obtained in 1995 does not estop Kalita from denying that her actions were willful and malicious. The 1995 action did not assert any additional claims against Kalita, but simply sought to renew the 1985 default judgment. Moreover, Kalita also suffered a "true default" judgment on the 1995 action. Accordingly, this court holds that the 1995 default judgment does not preclude Kalita from contesting the issue of whether her actions were willful and malicious.